Opinion by
Mr. Justice Moore.
The parties will be referred to as they appeared in the trial court where plaintiff in error was defendant and defendants in error were plaintiffs.
It is alleged in the complaint that the plaintiffs are the parents of one Walter L. Wash and are the named beneficiaries in a life insurance policy in the amount of $10,000 issued by the defendant on the life of Walter; that monthly premiums were paid on the policy; that Walter died; that proof of death was made; and that their demand for payment of the $10,000 due under the policy was refused by the defendant.
In its answer defendant admits that plaintiffs are beneficiaries and that Walter L. Wash died; denies that the policy was of any legal effect; that the amount of the policy is $10,000; and that the policy was in full force and effect at the time of the death of Walter.
In the second defense it is alleged that no contract of insurance was ever entered into; that the application as submitted provided for an annual premium of $425.70 and for a waiver of premium at an additional rate of $7.90; that the defendant refused to accept the offer of the insured as contained in his application, and increased the annual premium by $45 to a total of $470.70 and declined to issue a waiver of premium; and that defendant declined the insured’s application and rated him up because of his hazardous occupation. It was further al *525 leged that the following provision was contained in the application which was signed by the decedent:
“Any change as to face amount, premium, classification, plan of insurance, or benefits of this application shall be recorded in the space provided for Plome Office Endorsement and any policy issued me on the basis of such change shall not take effect until the change made hereon has been approved in writing by me.”
It was also asserted in the second defense that the changes above noted were never approved by the insured in writing; that on the contrary they were disapproved by him; that the offer of the insured as contained in the application was never accepted by the defendant; and that the counter-offer of the defendant was never accepted by the insured and no contract resulted.
The third defense refers to a conditional receipt issued by a representative of the defendant, which contains the following:
“The insurance applied for shall become effective . . . provided that duly authorized officers of the company at its Home Office shall be satisfied . . . the life proposed for insurance was acceptable under the rules, limits, and standards of the company for the amount and plan applied for and at the premium stated in this receipt.”
It further alleges that the defendant did not accept the insurance applied for but changed the plan which in turn was never accepted by the insured, and that no contract resulted.
The fourth defense sets up a material fraudulent misrepresentation in that the application states: “Dated at Denver, Colorado,” whereas in truth and in fact it was signed and entered into in Kansas City, Missouri; and that if the defendant had known the application was written in Missouri it would have rejected it because the defendant is not authorized to do business in Missouri and would be subject to losing its license.
The fifth defense states that the defendant’s agent, *526 Neill, had no authority to accept an application in Missouri.
The sixth defense alleges that the wife of the agent Neill is a first cousin of one of the plaintiffs, and that the agent conspired with the plaintiff to falsify the application; and that the defendant would not have accepted the premium if it had known of the false matters.
The seventh defense was amended and appears at folios 36 and 38. It alleges that defendant returned the premiums previously received.
The eighth defense sets forth a request by the insured to reduce the policy from $10,000 to $5,000.
The ninth defense states that the plaintiffs brought suit against the defendant in Missouri and that the United States Court of Appeals for the 8th Circuit (298 F.2d 374) determined that the agent Neill had no authority to bind the defendant; and that the matter of the agent’s authority is res adjudicata.
The tenth defense alleges that at no time did the insured pay the premium required.
At the conclusion of the trial, which was to the court without a jury, findings were made on issues of fact in favor of the plaintiffs, and judgment entered against the defendant for the sum of $10,000 less $8.76 due from the deceased by way of adjustment of premium.
The main thrust of the argument for reversal of the judgment is stated in the Summary of Argument as follows:
“A. No contract resulted and the policy issued hereunder never became effective; the decedent made an offer as contained in the application; the offer (application) was never accepted by the defendant; the defendant made a counter offer by increasing the premiums and changing the plan of insurance, which was never accepted by the decedent.
“B. The trial court erred in finding that the defendant ‘tacitly agreed.’ It w°s uo to the decedent to accept the counter offe1' of the defer dant, which the decedent *527 did not do. The trial court seems to imply some kind of a waiver, but waiver, which is an affirmative defense, was not pleaded or argued. On the facts there was no waiver or estoppel by the defendant.
“C. The insurance policy by its terms required the payment of the first premium stated therein. The same was not paid and the policy therefore never became effective.”
On behalf of the plaintiffs it is argued that the judgment should be affirmed for the following reasons:
“A. As a consequence of the actions by the defendant’s agent and by the company itself, payment of the additional amount of the rated up premium herein involved and written approval by the insured of the changes made by the defendant in the application were waived, and the defendant is estopped to deny that a contract of insurance became effective. The defendant’s agent Neill, acting within his apparent authority prior to receiving notification that his letter of resignation had been accepted by the defendant, informed the insured by letter (Exhibit H) that the adjustment in the premium rate would be made on the anniversary date of the policy. Furthermore, the defendant’s underwriting manager had in writing (Exhibit M) taken the position that the policy was in effect when he wrote the insured relative to a change which would reduce the face amount of the policy.
“B. Defendant accepted, retained and deposited three monthly premium checks for $36.31 each, and by well established principles of law is thereby estopped to deny its liability on the insurance contract. Commissions from these three checks were credited to the account of the soliciting agent. The third of these three checks was cashed some three weeks after the defendant had clear knowledge of the insured’s displeasure at the premium rate and his desire to reduce the face amount of the policy. It was only after the company had been in *528 formed of the insured’s death, some 75 days after the application had been taken, that the company made its first attempt to repudiate the policy and return any of the premium payments.
“C. Aside from the question of waiver and estoppel, there is sufficient evidence in the case that prior to the death of the insured, WALTER L. WASH, (1) he had given written consent to the provisions of the policy as issued by the defendant company; and (2) he had paid sufficient premiums to keep the policy in force to the time of his death. This written approval could be implied from a letter written by the insured to the agent Neill, and by the construction placed upon such letter both by Neill and the defendant’s underwriting manager. This written approval was found in more express terms in the insured’s application for a reduction in the face amount of the policy. Regardless of whether the effective date of the policy related back to the date appearing on the application and policy itself or commenced upon a subsequent date when written approval of the insured had been given and the full first premium paid, the defendant at all times thereafter had sufficient premium money in its possession to provide insurance coverage for a period beyond the insured’s death.”
With reference to the matters quoted above in argument “A” on behalf of the plaintiffs, we direct attention to the content of the exhibits therein referred to. The evidence was to the effect that after receipt of the application the defendant changed the terms by increasing the total annual premium by the sum of $45 and by striking the “waiver of premium” clause. The policy as thus changed was mailed to the agent who procured the original application for delivery to the insured. This delivery was made by mail and the letter from the agent addressed to the insured was as follows:
“Enclosed you will find herewith your Investment Plan with Western Empire. You will note that due to your occupation your policy was issued at a $4.50 per *529 thousand rated basis which makes your monthly savings $39.23 in place of $36.31. This adjustment will be made on your anniversary date on your policy. If you have any questions feel free to write me. Just address letter to my home address - 4472 Wolff, Denver 12, Colorado.” The letter was signed “Western Empire Life Ins. Co. By Thomas A. Neill.”
Thereafter there was some correspondence between the insured and the agent (who had then severed his employment with the defendant) to the effect that the insured would like to reduce the amount of the policy to $5,000. The agent passed this information along to the defendant whose authorized agent then wrote to the insured a letter containing the following:
“Dear Mr. Wash: Mr. Tom Neill informs us that you wish to reduce the face amount of your above numbered policy from $10,000 to $5,000, which would of course cut the premiums in half. We shall he glad to comply with your request if you will sign and return the enclosed policy change form together with your policy. Also enclosed is a new pack of checks which should be signed and returned.” (Emphasis supplied.)
With reference to the facts as claimed by the plaintiffs in paragraphs B and C of their above-quoted Summary of Argument, it is sufficient to say that there was ample evidence to establish those facts as claimed. The trial court applied to these facts the general rule of law which is well stated in 44 C.J.S., Insurance, Sec. 232 page 987, as follows:
“The company may be estopped to deny an acceptance of an application for life insurance where the applicant was led to believe, and did believe, that it had been accepted, as where an officer or agent, clothed with authority to transmit information for the company as to such matters, notified the applicant that his application had been accepted, or, without expressly saying so, led him to believe that it had been * * *.”
With reference to the claim of the defendant that *530 payment in full of the first premium is essential to the validity of an insurance policy, this court has held that this requirement can be waived by the agent. In The National Mutual Fire Insurance Company v. Sprague, et al., 40 Colo. 344, 92 Pac. 227, we find the following:
“* * * We are further of the opinion that if a waiver was relied upon, whether pleaded or not, there was sufficient evidence to sustain it and to show that Kelsey was such an agent that a waiver by him would bind the company. He manifestly had the right to deliver policies, to solicit applications, to collect the premiums thereon, and it appears by the evidence that he represented the company in every respect so far as the plaintiffs were concerned, and that they did all their business with him. At least he was such an agent as could waive conditions precedent and thereby bind the company regardless of the recitals in the policy. * *
Counsel for the defendant relies upon C.R.S. ’53, 72-1-25, which provides in pertinent part that:
“* * * no statement or declaration made to or by an agent, examiner or other person, not contained in the application shall be taken or considered as having been made to or brought to the notice or knowledge of the company, or as charging it with any liability by reason thereof.”
This provision is relied upon to offset the statement of the agent that the adjustment in monthly premiums “will be made on your anniversary date on your policy.” It is argued that under the statute the company is not bound by this statement of the agent. We cannot agree. In Warner v. Farmers’ Automobile Inter-Insurance Exchange, 104 Colo. 359, 90 P.2d 965, the above quoted statute was construed and this court held that it operates to relieve an insurer of liability for statements made by an agent at the time application for insurance is made, unless such statements are included in the application. The statement admittedly made by the agent Neill, which led the insured to believe that his policy of in *531 sürance was in effect, was not made by Neill at the time of taking the application but was made upon delivery of the policy which had been issued following the application made by the deceased.
Under all the circumstances of this case we find no error in the findings made by the trial court or in the application of the law to the facts as found. There is no merit to the argument that a federal court decision is “res adjudicata” of any issue of fact involved in this case. The questions of waiver and estoppel were properly before the court for consideration under the pleadings and the pretrial conference order.
The judgment is affirmed.
Mr. Chief Justice Sutton and Mr. Justice Schauer concur.